[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12999
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-00637-CV-ORL-35-KRS

GENE BADGER,
JOHN LOVE,
MARVIN EVANS,
SID BANACK,
JOHN WILLIS, all on behalf
of themselves and all others
similarly situated,

Plaintiffs-Appellees,

versus

SOUTHERN FARM BUREAU LIFE
INSURANCE COMPANY, a
Mississippi Corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 30, 2010)

Before EDMONDSON, CARNES and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Plaintiffs-Appellees Badger *et al.*, some of the shareholders of Plaintiffs' Shareholders Corporation ("PSC"), brought this shareholders' derivative suit on behalf of PSC against Defendant-Appellant Southern Farm Bureau Life Insurance Company ("Southern Farm"). The charges involve federal securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, and Florida common-law fraud. The charges stem from Southern Farm's purchase of a debenture held by PSC, which was PSC's primary asset. In the course of negotiations, Southern Farm gave to PSC an actuarial valuation it had commissioned of the debenture and stated that the valuation represented a "fair price." After PSC and Southern Farm settled on a price higher than Southern Farm's valuation, PSC issued a meeting notice and proxy statement to its shareholders, who subsequently voted for the sale.

Plaintiffs were PSC shareholders who were opposed to the sale. They brought a shareholders' derivative suit against Southern Farm for federal securities fraud and Florida common-law fraud, alleging that Southern Farm's valuation was misleading because it did not take into account certain leverage that PSC had in

2

the deal, and that Southern Farm was liable for failing to disclose the facts giving rise to PSC's leverage to PSC's shareholders. The jury found Southern Farm liable in the amount of $31.7 million. Southern Farm now appeals, claiming, *inter alia*, that Jury Instruction 11 contained incorrect statements of law and that the proof underlying one basis of liability was legally insufficient. For the reasons set out below, the judgment of the district court must be reversed with regard to both the federal securities law claim and the Florida common-law fraud claim, and the verdict of the jury cannot stand.

## I. FACTS AND PROCEDURAL HISTORY

Southern Farm is a privately-held life insurance company owned by ten investment corporations located in ten states, including Florida. The common stock of each investment corporation is held by the Farm Bureau Federation in each of those respective states. The corporate relations between these various entities are governed by a Charter Treaty that: (1) restricts the dividends that each investment corporation can retain in excess of $5,700; (2) limits the transfer of Southern Farm and investment corporation stock; and (3) requires unanimous approval of any amendment, including any extension of the Treaty beyond its expected expiration date.

PSC acquired the debenture at the center of this case as a result of prior

3

litigation, the full details of which are not relevant here. The debenture was issued by Florida Farm Bureau Holding Corporation ("Florida Holding"). Pursuant to the terms of the debenture, its owner, PSC, was entitled to 27.7% of any dividends that Florida Holding received from Southern Farm, and upon termination of the Charter Treaty PSC would be entitled to receive 27.7% of Florida Holding's stock.

In 2000, Southern Farm began to explore extending the Charter Treaty, an action that would require unanimous approval of the ten state Farm Bureau Federations. In 2004, Southern Farm sought Florida Holding's consent to extend the Treaty. PSC's attorney, Bruce Brashear, formally objected to the extension of the Charter Treaty without the approval of PSC shareholders. PSC shareholders' right to approve the Charter Treaty extension arose in connection with its ownership of the debenture. Florida Holding's board resolved that it would consent to the Charter Treaty extension only if Southern Farm first purchased the debenture from PSC. In turn, Southern Farm's management decided to recommend purchasing PSC's debenture.

Brashear represented PSC in negotiations with Southern Farm's general counsel regarding the sale of the debenture. In the course of negotiations, Southern Farm offered $3.3 million for the debenture based on a valuation performed by the actuarial firm Towers Perrin Tillinghast ("the Valuation"). The

4

Valuation was calculated by applying a discount rate of 14% to the likely value of the 27.7% payout of the debenture in 2033, when the Charter Treaty was set to expire. Southern Farm's counsel told Brashear that the Valuation reflected a "fair price." PSC made a counteroffer of $4.4 million, and the companies agreed to the sale at that price.

Because Florida law requires a corporation to obtain shareholder approval in order to sell a principal asset, Fla Stat. § 607.1202, Brashear prepared and mailed to PSC shareholders a meeting notice and proxy statement detailing the proposed debenture sale. The proxy statement did not include the facts that Southern Farm wanted to extend the Charter Treaty or that Florida Holding had conditioned its consent to the extension on Southern Farm's purchase of the debenture. PSC shareholders met on October 15, 2004, and approved the sale by a 10-to-1 margin. Plaintiff Badger and several other PSC shareholders voiced their opposition both before and at the meeting.

Following the sale, Badger and other dissenters sued Southern Farm in this shareholders' derivative action, claiming that Southern Farm failed to disclose certain material facts about the debenture sale to the shareholders and that, as a result, PSC received too little consideration in exchange for the debenture. Specifically, the Plaintiffs alleged:

5

The Defendant represented to the Plaintiffs that the Tillinghast Valuation of the Convertible Debenture represented a fair price for the purchase of the Debenture, but the Defendant omitted the following information:

(a)     that [Southern Farm] was attempting to extend the Charter Treaty and that it could not do so without the consent of the debenture holder;

(b)     that Florida Holding and the Florida Federation would only consent to the extension of the Charter Treaty if [Southern Farm] first purchased the debenture;

(c)     that the Tillinghast Valuation did not consider (i) the Defendant's attempts to extend the Charter Treaty, (ii) Plaintiffs' control of any such extension, and (iii) [Southern Farm]'s need to purchase the debenture because Florida Holding and Florida Federation would only consent to the extension of the Charter Treaty if [Southern Farm] first purchased the debenture;

(d)     that contemporaneous with [Southern Farm]'s purchase of the debenture, it purchased a future income interest held by the Alabama Farm Bureau Federation using a discount rate of 4.9%; and

(e)     that in order to obtain the consent of the Texas Farm Bureau to extend the Charter Treaty, [Southern Farm] agreed to increase payouts to all ten (10) farm bureau federations by $82 million.

Jury Instructions, Dkt. 208 at 11-12, 19-20.

Using these alleged omissions as the basis for their claims, Plaintiffs sued

Southern Farm for violations of Rule 10b-5 and Florida common law. Jury

Instructions 9 and 10 detailed the elements of these claims respectively. Jury

Instruction 9 stated that, in order to prevail on the Rule 10b-5 claim, the Plaintiffs

6

had to prove each of the following facts by a preponderance of the evidence:

First:  That the Defendant's conduct in connection with the transaction violated Rule 10b-5(b) by making a false representation of a material fact, or omitting a material fact;

Second: That the Defendant acted "knowingly," as defined herein;

Third:  That the Plaintiffs "justifiably relied" upon the Defendant's conduct; and

Fourth: That the Plaintiffs suffered damages as a result of the Defendant's wrongful conduct.

Jury Instructions, Dkt. 208 at 10-11. Jury Instruction 10 stated that, in order to prevail on the common-law fraud claim, the Plaintiffs had to prove each of the following facts by a preponderance of the evidence:

First:  That the Defendant made one or more of those alleged misrepresentations or omissions;

Second: That the misrepresentation or omission related to a material existing fact;

Third:  That the Defendant knew at the time it made the misrepresentation that it was false or acted with reckless disregard for its truth or falsity or that the omission made other statements materially misleading;

Fourth: That the Defendant intended to induce the Plaintiffs to rely and act upon the misrepresentation or omission; and

Fifth:  That the Plaintiffs "reasonably" and "justifiably" relied

7

upon the misrepresentation or omission and the Plaintiffs suffered injury or damage as a result.

Jury Instructions, Dkt. 208 at 20-21.

The jury found Southern Farm liable for both a Rule 10b-5 violation and common-law fraud, and assessed compensatory damages of $31.7 million. The district court denied Southern Farm's renewed Motion for Judgment as a Matter of Law and Motion for New Trial. The district court then amended the judgment to add interest. This appeal followed.

## II. STANDARD OF REVIEW

"Our role in reviewing a trial court's jury instructions is to assure that the instructions show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." *S.E.C. v. Yun*, 327 F.3d 1263, 1281 (11th Cir. 2003) (internal quotation marks omitted). We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the party who objects to them. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1283 (11th Cir. 2008). "We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial." *Yun*, 327 F.3d at 1281. "As long as the instructions accurately reflect the law," we afford the district court "wide discretion as to the style and wording employed in the instructions." *Morgan*, 551

F.3d at 1283 (internal quotation marks omitted).

## III.  DISCUSSION

A.  <u>Jury Instruction 11</u>

Jury Instruction 11, the accuracy of which is the central issue in this appeal,

provides as follows:

> Ordinarily in an arms length transaction, a third party buyer or seller is free to rely on the board of a corporation to disclose information to the corporation, including to the corporation's shareholders.  In this regard, any disclosures by the third party to a director or an agent of the corporation or other knowledge obtained by the director or agent, where that director or agent is acting in his or her capacity as a board member or agent, is imputed to the board and, thus, discharges the third party's duty of disclosure if the disclosure is of all material information and is not materially misleading.
>
> In this case, shareholder approval was required to approve this transaction.  Therefore, if the Plaintiffs prove that the Defendant knew or was severely reckless as to whether material information had not been fully disclosed to the shareholders or that the disclosures made by the Defendant to the corporation were materially misleading, then the Defendant had a duty to disclose the material information directly to the shareholders, to insure that the shareholders got proper disclosure or to decline to enter the transaction.

Jury Instructions, Dkt. 208 at 25–26.

Southern Farm argues that Jury Instruction 11 is erroneous in two respects.

First, Southern Farm maintains that Instruction 11 incorrectly assigned liability if

Southern Farm merely "knew or was severely reckless as to whether material

9

information had not been fully disclosed to [PSC] shareholders," without also requiring the jury find that Southern Farm had a legal duty to disclose that information. Second, Southern Farm argues that, even if Southern Farm had a duty to disclose certain material information in the course of its transaction with PSC, Instruction 11 erred in instructing the jury that the duty ran directly to PSC shareholders, rather than to PSC's officers or board of directors. We will address each objection in turn.

1. Southern Farm's Duty to Disclose

Southern Farm argues that Instruction 11 erroneously omitted a requirement that the jury find that Southern Farm had a legal duty to disclose material facts to PSC. SEC Rule 10b-5, promulgated under the Securities Exchange Act of 1934, 15 U.S.C. § 78j, states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> a. To employ any device, scheme, or artifice to defraud,
>
> b. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> c. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any

person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Although Rule 10b-5 could be read broadly to require disclosure of any nonpublic information about a security that is the subject of a transaction, the Supreme Court has held that "a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information." *Chiarella v. United States*, 445 U.S. 222, 235, 100 S. Ct. 1108, 1118 (1980). Rather, the *Chiarella* Court clarified the scope of 10b-5, holding that in order to be liable under that section for failing to disclose a material fact, an entity must have a prior duty to disclose that fact. *Id.* As under the common law, such a duty "arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" *Id.* at 228, 100 S. Ct. at 1114 (quoting Restatement (Second) of Torts § 551(2)(a) (1976)). The Court noted, for instance, that "a purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary has been held to have no obligation to reveal material facts" in connection with the stock purchase. *Id.* at 229, 100 S. Ct. at 1115 (citing *Gen. Time Corp. v. Talley Indus., Inc.*, 403 F.2d 159, 164 (2d Cir. 1968), *cert. denied*, 393 U.S. 1026, 89 S. Ct. 631 (1969));

11

*see also Roder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st. Cir. 1987) (recognizing the logical corollary of *Chiarella* that "[e]ven if information is material, there is no liability under Rule 10b-5 unless there was a duty to disclose it"). Thus, there can be no liability for a failure to disclose under Rule 10b-5 or the common law in the absence of a duty to disclose.

Following *Chiarella*, this Court has also recognized that "a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001) (quoting *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986) (alteration omitted)). *See also Williams v. Dressler Indus., Inc.*, 120 F.3d 1163, 1173 (11th Cir. 1997) (recognizing in dicta that "a duty to disclose . . . does not exist absent a fiduciary relationship or some other similar relationship of trust and confidence"). In *Ziemba*, we noted that this duty arises both "'where the law imposes special obligations, as for accountants, brokers, or other experts'" and "'[w]here a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive.'" 256 F.3d at 1206 (quoting *Rudolph*, 800 F.2d at 1043).

In this case, the parties agree that Southern Farm and PSC were engaged in an arm's-length transaction; PSC has not asserted the existence of a fiduciary

12

relationship or other similar relationship of trust and confidence between PSC shareholders and Southern Farm. Rather, at trial, PSC proceeded on the theory that both the Valuation and statement that the Valuation represented a "fair price" constituted prior speech by Southern Farm that was misleading or deceptive without the omitted information. PSC argued that the legal duty to disclose arose because the omissions made the Valuation and the fair price statement materially misleading. We are doubtful that a buyer's assessment of the value of a seller's debt instrument, or a buyer's accompanying statement that the assessment is fair, could ever constitute misleading or deceptive prior speech giving rise to a duty to disclose. *See Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1295 (9th Cir. 1979) (purchaser of corporate assets owed no duty to disclose material facts to members of selling corporation, because selling corporation "should be presumed to have known as much about its own assets and affairs" as purchaser in an arm's-length deal); *see also* Restatement (Second) of Torts § 542 cmt. d ("If the subject matter of the transaction is one upon which both parties have an approximately equal competence to form a reliable opinion, each must trust to his own judgment and neither is justified in relying upon the opinion of the other."). Indeed, we are aware of no case suggesting that, in an arm's-length transaction, the buyer's opinion of the value of the seller's asset, unaccompanied by a

13

misstatement of fact on which the value is based, could constitute an affirmative statement which could be rendered misleading by an omission. We need not decide, however, whether the Valuation or accompanying statement could have given rise to such a duty to disclose in this case because errors in Jury Instruction 11 require reversal.

Instruction 11 imposed on Southern Farm a duty to disclose certain material information to PSC shareholders if Southern Farm "knew or was severely reckless as to whether material information had not been fully disclosed to the shareholders or that the disclosures made by [Southern Farm] to [PSC] were materially misleading." Thus, Instruction 11 allowed the jury to hold Southern Farm liable for failing to disclose material information to PSC shareholders either if: (1) Southern Farm "knew or was severely reckless as to whether material information had not been fully disclosed to the shareholders" or (2) Southern Farm had made disclosures to PSC that were "materially misleading." The first condition of this disjunction permitted the jury to find Southern Farm liable for merely knowing that material information had not been disclosed to PSC shareholders, even if Southern Farm itself had no legal duty to disclose that information, i.e., even if Southern Farm had no duty as described in *Chiarella* and its progeny. Because Instruction 11 omitted the requirement that Southern Farm must have had a legal

14

duty to disclose material information to PSC shareholders in order to be held liable under Rule 10b-5 for withholding that information, the instruction contains an incorrect statement of the law under *Chiarella* and our own subsequent cases.

Although the foregoing error in Instruction 11 is clear, at oral argument Plaintiffs argued that Southern Farm never objected in the district court to the instruction on this specific ground. We have carefully reviewed those portions of the record cited by Southern Farm as evidence that it preserved its objection to Instruction 11 and think the objection probably was not properly preserved. In general, a party must object to a jury instruction prior to deliberations in order to preserve the issue on appeal, and the failure to make a timely objection waives the right to raise the issue on appeal. *Landsman Packing Co. v. Cont'l Can Co.*, 864 F.2d 721, 726 (11th Cir. 1989). Thus, if Southern Farm did not make this objection in the district court, it could not prevail on this particular challenge on appeal unless it could show that the "error affects substantial rights." Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instruction that has not been preserved . . . if the error affects substantial rights."). Although this error may well have been "responsible for an incorrect verdict, leading to substantial injustice," *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1330 (11th Cir. 1999) (internal quotation omitted), we need not decide whether the stringent

15

standard for plain error is satisfied in this case, because Southern Farm's other challenge to Instruction 11 was clearly preserved, and is clearly meritorious.

Thus, we now turn to Southern Farm's argument that Instruction 11 erroneously imposed upon it a duty to disclose material information directly to PSC's shareholders.

2. Southern Farm's Duty to Disclose Directly to PSC Shareholders

Southern Farm further argues that, even if it had a duty to disclose certain material facts to PSC in the course of negotiations regarding the debenture purchase,[1] Jury Instruction 11 erred by imposing on Southern Farm a duty to disclose those facts directly to PSC shareholders. Any duty to disclose, Southern Farm argues, would have been satisfied by disclosure to PSC's officers or directors. This objection was clearly preserved before the district court. We agree that Instruction 11 was erroneous for this reason, and accordingly reverse the judgment on this ground.

Instruction 11 states, in relevant part:

> [I]f the Plaintiffs prove that the Defendant knew or was severely reckless as to whether material information had not been fully disclosed to the shareholders or that the disclosures made by the Defendant to the corporation were materially misleading, then the

---

[1] Of course, the preceding section of this opinion suggests that there probably was no such owed duty to PSC.

16

> Defendant had a duty to disclose the material information directly to the shareholders, to insure that the shareholders got proper disclosure or to decline to enter the transaction.

The district court formulated Instruction 11 upon determining that "[t]he law imposes a duty to make full disclosure to whomever the investor or decision maker is in this case." Trial Tr., Dkt. 256 at 151. The court therefore reasoned that, because the shareholders had the right to vote on the debenture sale, Southern Farm's duty to disclose material information in relation to the sale ran directly to the shareholders.

This is an incorrect statement of the law. In fact, courts have uniformly declined to find a duty to disclose running from one party in an arm's-length securities transaction to the shareholders of the counterparty to the transaction, absent some fiduciary or other special relationship between them. *See Regents of Univ. of Ca. v. Credit Suisse First Boston, Inc.*, 482 F.3d 372, 384 (5th Cir. 2007) (stating that general duty of banks "not to engage in a fraudulent scheme" did not create on behalf of banks a duty to disclose to a company's investors a series of transactions between banks and the company, because banks were not fiduciaries and were not otherwise obligated to the investors); *Arent v. Distrib. Scis., Inc.*, 975 F.2d 1370, 1373-74 (8th Cir. 1992) (holding that party to a potential merger had no duty to disclose to counterparty's shareholders fact that merger would fall

through because "unrelated parties to a merger agreement normally deal at arms' length until the merger is consummated, unless a different relationship is defined in the agreement to merge"); *Kidwell*, 597 F.2d at 1295 (noting that purchaser of corporate assets owed no duty to disclose material facts to members of selling corporation, in part because selling corporation "should be presumed to have known as much about its own assets and affairs" as purchaser in an arm's-length deal); *Wright v. Heizer*, 560 F.2d 236, 248 (7th Cir. 1977) (holding that corporate lender and shareholder who did not control nor serve on the board of the corporation was entitled to act solely in its own interest in dealing with the corporation's management, whose responsibility it was to advise the corporation's shareholders); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 551-52 (D. Del. 2002) (citing *Sheehan*, *infra*, to hold that "an acquiring company owes no duty to the target shareholders, absent a special relationship"); *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 310 (D. Del. 2001) (holding that, although the defendants committed an omission giving rise to a duty to disclose, only the shareholders' own board of directors, not the acquiring corporation, were liable under § 10b-5 for failure to disclose because the acquiring corporation "owed no duty to the [] shareholders or the plaintiffs in this case"); *Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97, 103 (W.D.N.Y. 1993) (stating that an acquiring

18

corporation owes no duty of disclosure to target company's shareholders); *Gordon v. Diagnostek, Inc.*, 812 F. Supp. 57, 60 (E.D. Pa. 1993) (holding that an acquiring corporation "owed no special fiduciary responsibility to the shareholders of a separate corporation whose stock it was planning to acquire as part of an arms-length transaction"); *see also Chiarella*, 445 U.S. at 229, 100 S. Ct. at 1115 ("A purchaser of stock who has no duty to a prospective seller because he is neither an insider nor fiduciary has been held to have no obligation to reveal material facts.").  In addition to this great weight of authority, we also note that Plaintiffs cite no precedent for the proposition that, in the absence of some fiduciary or special relationship, a duty to disclose directly to shareholders could arise in a situation such as this.

The district court, and Plaintiffs on appeal, relied primarily on *Wright v. Heizer* for the proposition that Southern Farm's duty to disclose the allegedly omitted material facts ran directly to PSC's shareholders.  The argument is grounded in *Wright*'s assertion that "[w]hen shareholder approval is required by state corporation law . . . it is the shareholders who represent the corporation and it is they who are entitled to disclosure of all material facts."  560 F.2d at 247.  It appears the district court reasoned from this statement that if Southern Farm had a duty to disclose material facts related to the debenture sale, that duty ran directly

19

to PSC shareholders because the shareholders were entitled to vote on that transaction. The Plaintiffs now urge us to accept the same reasoning. The flaw in the district court's reasoning is that *Wright* applied that principle, and imposed that duty, only when determining the obligations of a defendant who owed a fiduciary duty to the shareholders. The Plaintiffs' argument elides important facts about the relationships between the *Wright* parties giving rise to the duty to disclose in that case, and in doing so misstates *Wright*'s holding.

The *Wright* plaintiffs, who were minority shareholders of IDC, brought a derivative action alleging that the defendant, Heizer Corporation, defrauded IDC in a series of five transactions by failing to make appropriate disclosures about those transactions. *Id.* at 245-46. The court determined that Heizer was only liable for omitting material information concerning the final two transactions because Heizer exercised voting control over IDC during those transactions, and therefore occupied a fiduciary position with respect to IDC:

> In the first three transactions Heizer was a lender to, and shareholder of, a corporation it did not control and on whose board it was not represented. We may assume that as such it was entitled to act solely in its own interest in dealing with IDC's management, whose responsibility it was to advise the shareholders. By the time of the fourth transaction, however, Heizer had gained voting control of IDC and had placed two of its officers on IDC's board of directors. Thus it stood in a fiduciary position and could no longer act for itself alone. When Heizer chose to continue its participation in

20

> communications to the IDC shareholders, it owed them the duty of
> full disclosure.  As we have already noted, Heizer breached that duty
> by failing to disclose any of the material facts concerning the
> transaction.

*Id.* at 248.  The rule properly derived from *Wright* is that a party to a transaction

has a duty to disclose to the counterparty's shareholders only when failure to

disclose would result in the breach of a fiduciary or other duty.

The Plaintiffs have never asserted the existence of any fiduciary relationship

between Southern Farm and PSC.  Thus, *Wright* does not support the district

court's conclusion that Southern Farm owed a duty to disclose material

information directly to PSC's shareholders.  The district court's application of

*Wright* conflates two distinct questions: (1) whether shareholders are owed

disclosure of certain material facts, and (2) whose duty it is to disclose those facts.

While *Wright* supports the proposition that PSC shareholders had a right to

disclosure of material facts related to the debenture sale, it does not, contrary to

the district court's reasoning, support the proposition that such a duty fell to

Southern Farm.  Rather, any duty to disclose pursuant to *Wright* must fall on

parties who occupy a fiduciary or other special relationship to the shareholders.  In

this case, such a duty would fall on PSC's officers and directors rather than on

21

Southern Farm.[2]

In addition to finding no support in the law, the direct disclosure requirement advocated by PSC also raises practical concerns. The district court's rule would have required Southern Farm to circumvent both Brashear, with whom Southern Farm was negotiating, and the PSC board of directors in order to issue its own statement to the PSC shareholders. It is unclear whether it is even feasible for a company such as Southern Farm to make a statement directly to another company's shareholders. For example, there is no reason to assume that Southern Farm even has access to a list of PSC shareholders to which to send such a statement.

Because it is undisputed that the transaction in this case occurred at arm's-length, we need not define the parameters of a buyer's duty to disclose to shareholders of a seller's corporation under circumstances in which the buyer has conspired with or otherwise exerted improper influence over the seller's board of

---

[2]     Other cases cited by Plaintiffs also fail to persuade us that the direct disclosure duty described in *Wright* runs from one party in an arm's-length transaction to the shareholders of the counterparty, because each of those cases discussed whether a duty to disclose existed on the part of shareholders' own boards of directors, rather than on the part of a disinterested third party. *See, e.g.*, *Ray v. Karris*, 780 F.2d 636, 642-43 (7th Cir. 1985) (discussing deception under Rule 10b-5 in the context of a suit by minority shareholders against board of directors); *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979) (finding no deception for the purposes of Rule 10b-5 where amendments to stock option plan were validly enacted by a vote of disinterested board members who had been fully informed of all material facts, and whose knowledge was therefore attributable to the corporation).

directors. Here, there is no suggestion that Southern Farm exerted improper control over PSC's officers or board of directors, or that Southern Farm conspired with PSC's agents to deprive PSC shareholders of material information. *Cf. Schoenbaum v. Firstbrook*, 405 F.2d 215, 219 (2d Cir. 1968) (en banc) (affirming district court's dismissal of a complaint alleging securities fraud upon determining that "there is no reason to believe that [the defendant] was in any position to influence the judgment of the [plaintiff's board of directors] by any improper means"). Finally, we note that if PSC's shareholders believe that they were materially misinformed with regard to the debenture sale, they are free to sue PSC's agents for breaching their fiduciary duties.

In conclusion, Jury Instruction 11's statement that Southern Farm's duty to disclose ran directly to PSC shareholders is an incorrect statement of the law. We are convinced that this instruction "mis[led] the jury with respect to the applicable principles of law," *Yun*, 327 F.3d at 1281, and requires reversal of the judgment against Southern Farm.

B. Legal Sufficiency of Proof Underlying Bases of Liability

As an additional ground for reversal, Southern Farm argues that the judgment below cannot stand because liability was based on Southern Farm omitting one or more material facts in its disclosures to PSC, yet the evidence is

23

insufficient as a matter of law to show that at least some of those omissions occurred. The verdict form's special interrogatories pertaining to the securities fraud claim asked the jury: "Do you find from a preponderance of the evidence . . . [t]hat the Defendant's conduct in connection with the transaction violated Rule 10b-5(b) by making a false representation of a material fact, or omitting a material fact (as explained in the Court's instructions)?" Verdict Form: Special Interrogs., Dkt. 212 at 1. The jury answered "Yes." As noted above, the alleged omissions set forth in the instructions were:

(a)     that [Southern Farm] was attempting to extend the Charter Treaty and that it could not do so without the consent of the debenture holder;

(b)     that Florida Holding and the Florida Federation would only consent to the extension of the Charter Treaty if [Southern Farm] first purchased the debenture;

(c)     that the Tillinghast Valuation did not consider (i) the Defendant's attempts to extend the Charter Treaty, (ii) Plaintiffs' control of any such extension, and (iii) [Southern Farm]'s need to purchase the debenture because Florida Holding and Florida Federation would only consent to the extension of the Charter Treaty if [Southern Farm] first purchased the debenture;

(d)     that contemporaneous with [Southern Farm]'s purchase of the debenture, it purchased a future income interest held by the Alabama Farm Bureau Federation using a discount rate of 4.9%; and

(e)     that in order to obtain the consent of the Texas Farm Bureau to extend the Charter Treaty, [Southern Farm] agreed to increase payouts to all ten (10) farm bureau federations by $82 million.

Jury Instructions, Dkt. 208 at 11-12, 19-20. Instruction 9, which set forth the elements of a § 10b-5 claim, required the jury to find only that the Southern Farm omitted "one or more"of these material facts. Jury Instructions, Dkt. 208 at 12. Instruction 10, which set forth the elements of a common-law fraud claim, expressly instructed the jury that "[i]t is not necessary that the Plaintiffs prove all of them in order to recover." Jury Instructions, Dkt. 208 at 20.

Southern Farm argues that the unrefuted evidence shows that PSC's attorney, Brashear, had full knowledge of at least two of these alleged omissions. In light of our holding that Southern Farm did not have a duty to disclose material facts directly to PSC shareholders, we further hold that it was error to permit the jury to find liability on the basis of omissions that were known to Brashear, who was acting as PSC's agent.

At trial, undisputed evidence showed that Brashear was fully aware of facts (a) and (b). In fact, upon learning that Southern Farm was attempting to extend the Charter Treaty, it was Brashear who wrote to Florida Holding to remind it that it could not vote to extend the Treaty without PSC's consent. PSC even conceded at trial that "Mr. Brashear knew the functionality of the debenture as a veto power over anything that the Federation wanted to do with respect to extending or altering the value of Florida Holding." Trial Tr., Dkt. 254 at 185.

25

Because Brashear acted as an agent of PSC in his dealings with both Florida Holding and Southern Farm, Brashear's knowledge with respect to those transactions is imputed to PSC:

> The general rule is well established that a corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation.

*Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 271 n.16 (5th Cir. 1981) (quoting 3 W. Fletcher, Cyclopedia of the Law of Private Corporations s 790, at 12 (rev. perm. ed. 1975)) (alteration omitted).[3] Thus, because Brashear knew "that [Southern Farm] was attempting to extend the Charter Treaty and that it could not do so without the consent of the debenture holder," Southern Farm cannot be held liable for failing to disclose that information to PSC.

The verdict form did not require the jury to state which omission(s) provided the basis for its liability finding, and it is clear that at least some of the alleged omissions cannot support the verdict. Unless PSC "can support submission of each theory of liability submitted to the jury, we must remand the

---

[3]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

case for a new trial." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983). Because some of PSC's theories of liability that are based on certain omissions are legally deficient, and because we cannot know from the verdict form whether the jury imposed liability on Southern Farm based on one of these impermissible theories, the judgment of the district court must be reversed on this additional ground.

For the foregoing reasons,[4] we reverse judgment below and remand this case for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[4]    Because we conclude that there are multiple grounds for reversing the judgment below, we need not reach Southern Farm's additional arguments that the jury's determinations of scienter, materiality, or damages were against the great weight of the evidence, or that the district court erred in calculating the rate of prejudgment interest to apply to the damages award.