[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16388

_____

D.C. Docket No. 5:13-cv-00552-WTH-PRL


KELLEAN K. TRUESDELL, individually and on behalf of others similarly
situated,

                                    Plaintiff - Appellee - Cross Appellant,

                        versus

CLAYTON THOMAS, individually,
CHRIS BLAIR, individually and in his official capacity as the Marion County
Sheriff,

                                    Defendants - Appellants - Cross Appellees.


_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(May 2, 2018)

Before WILLIAM PRYOR, JILL PRYOR, and CLEVENGER,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Raymond C. Clevenger III, United States Circuit Judge for the Federal Circuit Court
of Appeals, sitting by designation.

This appeal presents several questions about the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725: whether the Act permits punitive damages against municipal agencies and multiple awards of liquidated damages for separate violations; whether the district court abused its discretion when it refused to certify a class and to grant a new trial; and whether the district court erred when it instructed the jury about punitive damages. While employed as a Sergeant at the Marion County Sheriff's Office, Clayton Thomas used the Florida driver and vehicle identification database to access the personal information of tens of thousands of people. Two of Thomas's searches involved Kellean Truesdell's personal information. Truesdell sued Thomas, in his individual capacity, and Chris Blair, the Sheriff of Marion County, in his official and individual capacities. She moved the district court to certify a class of Thomas's alleged victims, but the district court denied her motion. At trial, the jury assessed $100 in punitive damages against Thomas and $5,000 in punitive damages against Blair's office, after the district court instructed the jury that punitive damages should bear a reasonable relationship to compensatory damages. The jury awarded no compensatory damages, but the district court assessed $2,500 in liquidated damages for each time Thomas accessed Truesdell's information. The district court later denied Truesdell's motion for post-trial class certification and for a new trial on punitive damages. We affirm.

2

## I.    BACKGROUND

Clayton Thomas worked as a Sergeant at the Marion County Sheriff's Office. Between January 2010 and July 2013, he used the Florida driver and vehicle identification database to access the personal information of thousands of people. Thomas admitted that many of these searches were motivated by "curiosity," but he also stated that some searches were in response to "calls about cars in the [jail] parking lot or suspicious vehicle[s]" at the jail. On June 8, 2011, and again on February 28, 2012, Thomas accessed Kellean Truesdell's information without justification.

In 2012, the Florida Department of Law Enforcement notified the Sheriff's Office of potential misuse of the driver database. An internal investigation revealed that Thomas had misused the database. In 2013, the Sheriff's Office notified Truesdell that Thomas had accessed her information.

Truesdell sued Thomas in his individual capacity and Chris Blair, the Sheriff of Marion County, in his individual and official capacities. Truesdell alleged that Thomas accessed the personal information of thousands of people in violation of the Act and that the Sheriff's Office "failed to prevent unauthorized access to the database," and she demanded "injunctive relief and money damages." She then moved the district court to certify under Federal Rule of Civil Procedure 23(b)(3) a class of "approximately 42,364 individuals whose personal information was

3

accessed by . . . Thomas during the class period in violation of the [Act]." Truesdell also asserted that the Sheriff's Office had failed to notify many of the alleged victims as required by both Florida law and an agreement between the office and the Florida Department of Highway Safety and Motor Vehicles.

The district court refused to certify the class after adopting the magistrate judge's report and recommendation. The district court underscored "a lack of typicality and commonality" among the claims asserted by Truesdell and the potential class members. *See* Fed. R. Civ. P. 23(a). For example, Thomas asserted that he had legitimate reasons for some of his searches, which led the district court to conclude that Truesdell "has not sufficiently overcome the fatal fact that . . . Thomas'[s] reasons for accessing each putative class member's personal information may vary for each class member, . . . resulting in numerous mini-trials and a lack of typicality and commonality." The district court also explained that Truesdell had asserted a "[section] 1983 claim as to which there is no statutory liquidated damages amount, and the [d]efendants and each class member would thus be tasked with litigating his or her actual damages." And the district court agreed with the magistrate judge that a class action was not "superior[]" to individual litigation, Fed. R. Civ. P 23(b)(3), because a class action threatened disproportionate liability and because the Act encourages individual litigation by offering liquidated damages and attorney's fees. The district court concluded "that

4

any amendments to certify a more narrow class would suffer from the same deficiencies, and therefore, denial of the motion without leave to amend [was] appropriate."

At trial, the district court answered two jury questions. First, in response to the question, "If we answer questions yes, does the dollar amount have to be more than zero[,]" it instructed the jury that it need not award damages even if it found that the defendants had violated the law. Second, in response to the question, "If the jury determines that the Sheriff's Office should pay punitive damages, are we to only consider the [two] violations of the [p]laintiff's privacy in determining the amount[,]" the district court informed the jury that "[i]n determining the amount of a punitive damage award the [j]ury should consider all of the evidence concerning the gravity and extent of the [d]efendants' misconduct, but the amount awarded should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff." Truesdell objected to the second instruction on the ground that "the analysis of the reasonable relationship of the amount of actual[] [damages] to punitive[] [damages] would be an appropriate analysis for the [c]ourt post-judgment and not something that the jury enters into their calculus in determining the amount on their verdict." The jury denied Truesdell compensatory damages, but it awarded $100 in punitive damages against Thomas and $5,000 in punitive damages against Blair, in his official capacity as Sheriff. The district court

also assessed $5,000 in joint and several statutory damages against Thomas and Blair, in his official capacity, "representing an award of $2,500[] for each of two violations of 18 U.S.C. [section] 2722(a)."

After trial, Truesdell moved the district court to "enter a class-wide judgment for liquidated damages" and to grant "a new trial as to the amount of punitive damages." Thomas and Blair argued that the court should award only a total of $2,500 in liquidated damages instead of $2,500 for each violation, and they contended that "[f]ederal law is clear that punitive damages are not available against the Sheriff's Office on a civil rights claim." The district court rejected all of these arguments.

## II.   STANDARDS OF REVIEW

"The interpretation of a statute is a question of law subject to *de novo* review." *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1211 (11th Cir. 2005). The Act "set[s] a floor of $2,500 in liquidated damages, and any award the district court grants above that amount is reviewed for abuse of discretion." *Ela v. Destefano*, 869 F.3d 1198, 1201 (11th Cir. 2017). Similarly, "[a] district court's decision whether or not to certify a class under Rule 23 of the [Federal Rules of Civil Procedure] is reviewed for abuse of discretion," *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003), as is "a trial court's disposition of a motion to grant a new trial." *Williams v. City of Valdosta*, 689 F.2d 964, 974 (11th Cir. 1982). And

6

"[w]e review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the party who objects to them." *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1339 (11th Cir. 2010). But "[w]e will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial." *Id.* (quoting *S.E.C. v. Yun*, 327 F.3d 1263, 1281 (11th Cir. 2003)).

## III.    DISCUSSION

We divide our discussion in five parts. First, we explain that the Act permits punitive damages against municipal agencies. Second, we explain that the district court did not abuse its discretion when it assessed liquidated damages for both occasions when Thomas accessed Truesdell's information. Third, we explain that the district court did not abuse its discretion when it declined to certify a class action. Fourth, we explain that the district court did not abuse its discretion when it declined to grant a new trial. Fifth, we explain that the district court did not err when it instructed the jury that punitive damages should bear a reasonable relationship to compensatory damages.

### A.    *The Act Permits Punitive Damages Against Municipal Agencies.*

The plain text of the Act allows punitive damages against municipal agencies. Section 2722(a) states that "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." And section 2724

provides both a private cause of action and several remedies against a liable

person:

> (a) Cause of action.— A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
> (b) Remedies.—The court may award—
>> (1) actual damages, but not less than liquidated damages in the amount of $2,500;
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>> (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and
>> (4) such other preliminary and equitable relief as the court determines to be appropriate.

The Act defines "person" as "an individual, organization or entity, but does

not include a State or agency thereof." 18 U.S.C. § 2725(2). This definition does

not exclude municipal agencies such as sheriff's departments. Blair concedes that

the term "person" in section 2724(a) applies to the Sheriff's Office, although he

disputes that all remedies in section 2724(b) are available against the office.

"The text must be construed as a whole," Antonin Scalia & Bryan A.

Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012), and it would

be a feat of statutory reconstruction to sever the term "person" as it appears in

section 2722(a) and section 2724(a) from the remedies enumerated in section

2724(b). Section 2725(2) defines "person" to include municipal agencies. Section

8

2722(a) and section 2724(a) specifically identify what conduct exposes a "person" to liability. And section 2724(b) outlines the available remedies for a violation.

The holding of the Supreme Court in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), that "a municipality is immune from punitive damages" under another statute, 42 U.S.C. § 1983, does not change our conclusion. In *Newport*, the Court reasoned that the common-law tradition of not assessing punitive damages against municipalities, the legislative history of section 1983, and public policy concerns foreclosed punitive damages against municipalities under section 1983. *See id.* But the Court acknowledged that "Congress [may] specifically so provide[] [if] it wishe[s] to abolish the doctrine" of "municipal immunity from punitive damages." *Id.* at 263 (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). And Congress "so provided" in the Act. *Id.*

Unlike section 1983, which is silent about damages, the Act specifically permits punitive and liquidated damages. *Cf. id.* at 265 (concluding "[t]hat the exclusion of punitive damages [from section 1983] was no oversight"). And when a statute that applies to a municipal agency "allows expressly for damages that are more than compensatory," these damages are available against the agency. *Morgado v. Birmingham-Jefferson Cty. Civil Def. Corps*, 706 F.2d 1184, 1189 (11th Cir. 1983). We cannot read an implicit exception for municipal agencies into

9

the express provision of the Act that permits punitive damages against a willful or reckless violator.

B.    *The District Court Did Not Abuse Its Discretion When It Awarded $2,500 in Liquidated Damages for Each of Thomas's Two Violations of the Act.*

Thomas and Blair contend that the district court erred when it awarded $2,500 in liquidated damages for both occasions when Thomas accessed Truesdell's information, but we disagree. The Act states, "The court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C § 2724(b)(1). According to Thomas and Blair, this "language does not support that the liquidated damages are cumulative for multiple violations by a single defendant." But we recently explained in *Ela* that the Act "set[s] a floor of $2,500 in liquidated damages, and any award the district court grants above that amount is reviewed for abuse of discretion." 869 F.3d at 1201.

The district court did not abuse its discretion. Thomas's two violations were separated by eight months, Thomas offered no justification for either action, and Truesdell offered evidence that the Sheriff's Office conducted a lackluster internal investigation. In the light of this evidence, the district court was entitled to award damages for each violation.

C.    *The District Court Did Not Abuse Its Discretion When It Refused To Certify a Class of Thomas's Alleged Victims.*

Truesdell argues that the district court abused its discretion when it declined to certify under Federal Rule of Civil Procedure 23(b)(3) a class "seek[ing] declaratory, injunctive and monetary relief." A plaintiff who seeks class certification of any kind must establish that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)–(3). And a plaintiff who seeks "individualized monetary claims" must establish "that a class action is superior to other available methods" under Rule 23(b)(3). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).

The district court did not abuse its discretion when it determined that Truesdell failed to establish commonality, typicality, and superiority. For example, Thomas asserted that he had legitimate reasons for some of his searches, which led the district court to conclude that Truesdell "ha[d] not sufficiently overcome the fatal fact that . . . Thomas'[s] reasons for accessing each putative class member's personal information may vary for each class member, . . . resulting in numerous mini-trials and a lack of typicality and commonality." This fear of "mini-trials" was legitimate, especially because the Act broadly permits the use of protected information "by any government agency . . . in carrying out its functions." 18 U.S.C. § 2721(b)(1). The district court also explained that Truesdell had asserted a

11

"[section] 1983 claim as to which there is no statutory liquidated damages amount, and the [d]efendants and each class member would thus be tasked with litigating his or her actual damages." The district court also was entitled to determine that a class action was not a "superior" method of vindicating the rights of potential plaintiffs who might wish to prove individual damages. That the Act encourages individual litigation by offering liquidated damages and attorney's fees, *see id.* § 2724(b), although not dispositive, is a factor the district court was entitled to consider. And the district court was entitled to deny Truesdell's post-trial motion for class certification based on the same deficiencies.

Truesdell complains that the district court should have permitted her to "amend the Class Action Complaint and seek to certify a class seeking only declaratory and injunctive relief, requiring the Sheriff to notify each and every victim that her personal and confidential driver's license information was accessed by . . . Thomas," but we see no abuse of discretion. Truesdell contends that an injunction-only class could have compelled the Sheriff's Office to notify all of Thomas's alleged victims as required by its agreement with the Florida Department of Highway Safety and Motor Vehicles. But Truesdell never actually requested that the district court certify an injunction-only class: she mentioned only the possibility that she "*could* amend [her] complaint to seek certification of a class for, *inter alia*, injunctive relief forcing the [Sheriff's Office] to provide notice to all

12

victims." In that same motion, Truesdell reiterated a desire to "seek statutory damages," and her post-trial motion for certification requested "a class-wide judgment for liquidated damages." And even if Truesdell had requested an injunction-only class action, she would have fallen short of the Rule 23(a) prerequisites of typicality and commonality in the light of the possibility that some of Thomas's searches were legitimate.

D.    *The District Court Did Not Abuse Its Discretion When It Refused to Grant a New Trial.*

Truesdell contends that she deserved a new trial because "[t]he punitive damage award[s] [of $100 against Thomas and $5,000 against Blair, in his official capacity, were] manifestly unjust, against the overwhelming weight of the evidence, and contrary to the [c]ourt's instruction regarding punishment and deterrence," but we disagree. Although Truesdell asserts that "the amount of the award is akin to a license to engage in outrageous conduct in [the] light of the evidence adduced at trial," this argument is meritless because "the question whether to award punitive damages is left to the jury, which may or may not make such an award." *Smith v. Wade*, 461 U.S. 30, 52 (1983) (quoting D. Dobbs, *Law of Remedies* 204 (1973)). The jury weighed the evidence and awarded punitive damages despite finding that Truesdell had not suffered actual damages.

E.    *The District Court Did Not Err When It Instructed the Jury About Punitive Damages.*

Truesdell argues that the district court erred when it gave the following instruction to the jury: "In determining the amount of a punitive damage award the [j]ury should consider all of the evidence concerning the gravity and extent of the [d]efendants' misconduct, but the amount awarded should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff." She asserts that this instruction, coupled with both the instruction that the jury need not award actual damages and the jury's ignorance of statutory damages, artificially depressed the award of punitive damages. In support of this theory, she contends that the punitive damage awards of $100 against Thomas and $5,000 against Blair are inadequate "in the face of the overwhelming evidence of gross and repeated misconduct." And Truesdell highlights that the district court, and not the jury, is responsible for "ensuring [the] proportionality" of punitive damages.

Truesdell's argument fails. The instruction that punitive damages "should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff" is a correct statement of law. As the Supreme Court explained in *State Farm Mutual Automobile Insurance Co. v. Campbell*, "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." 538

14

U.S. 408, 426 (2003). We are unpersuaded that the instruction "misle[]d the jury to the prejudice of" Truesdell. *Badger*, 612 F.3d at 1339. The district court properly instructed the jury on the purpose of punitive damages and instructed the jury to consider "all of the evidence concerning the gravity and extent of the [d]efendants' misconduct." And "the question whether to award punitive damages is left to the jury, which may or may not make such an award." *Smith*, 461 U.S. at 52 (quoting Dobbs, *supra*, at 204). "[T]he charge, taken as a whole, [was not] erroneous and prejudicial." *Badger*, 612 F.3d at 1339 (quoting *Yun*, 327 F.3d at 1281).

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Truesdell.

JILL PRYOR, Circuit Judge, concurring in part:

I write separately only with respect to Section III.E. of the majority opinion. I agree with the majority that the district court's instruction to the jury that "the amount [of punitive damages] awarded should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff" is a correct statement of law, as far as it goes. I write separately only to clarify that I do not believe our opinion should be read to suggest that an instruction like this one should be given generally or in any particular case. Further, I am unsure that this one sentence of instruction about proportionality, without more, provides a jury with sufficient guidance for applying the principle. Like the majority, however, I am unpersuaded that the district court's instruction—even if incorrect or incomplete—misled the jury to the prejudice of appellant Kellean Truesdell. I thus concur in the result the majority reached.