[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11548
_____

D.C. Docket No. 6:13-cv-491-JA-KRS


THERESA ANN ELA,

Plaintiff-Appellant,

versus

KATHLEEN DESTEFANO,
individually a.k.a. Kathleen Ela,
JERRY L. DEMINGS,
in his official capacity as Sheriff of Orange County,
JOHN DOES 1-30,
acting in their individual capacity,
JANE DOES 1-30,
acting in their individual capacity,
ORANGE COUNTY, SHERIFF DEPARTMENT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 30, 2017)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,[*] District Judge.

WILSON, Circuit Judge:

Theresa Ela sued Kathleen Destefano, an Orange County Sheriff's Deputy, for improperly accessing and viewing her private information on Florida driver's license databases. Following a jury trial, the district court granted Ela's motion for judgment as a matter of law and held Destefano liable under the Driver's Privacy Protection Act (DPPA) and 42 U.S.C. § 1983. Based on special interrogatories answered by the jury, the Court awarded Ela liquidated damages and attorneys' fees. On appeal, Ela challenges the amount of liquidated damages awarded, which requires us to interpret the remedies provision in the DPPA. Ela also argues that the district court abused its discretion in reducing the requested attorneys' fees.

I.

Theresa Ela was married to Dennis Ela until 2010. In 2011, Dennis Ela married Kathleen Destefano, who had a romantic relationship with Dennis Ela while he was still married to Theresa Ela. From January 2010 through November 2011, while sitting alone in her patrol car, Destefano used her access to law enforcement databases (which store photographs, addresses, vehicle information, etc.) to search Ela's name. In 2010, shortly after her divorce, Ela requested access to public records and learned that Destefano had been searching her name on

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

driver's license databases. Ela complained to the Professional Standards Division of the Orange County Sheriff's Office. During the ensuing internal investigation, Destefano stated that she did not have a legitimate business or law enforcement reason for accessing Ela's information.[1] Destefano was suspended for 60 hours without pay and placed on disciplinary probation for six months. The internal investigation revealed no evidence that Destefano used or disclosed Ela's personal information. Despite this, Ela asserted emotional distress[2] and proceeded to trial against Destefano, her ex-husband's new wife, seeking over $1,000,000 in compensatory damages.

After the jury trial, the district court granted Ela's motion for judgment as a matter of law as to Destefano's liability, and Ela agreed to seek damages only under the DPPA and not § 1983. The district court then provided the jury with a verdict form containing three interrogatories to determine damages. In response to the first interrogatory, the jury found that Destefano violated the DPPA 101 times. In response to the second interrogatory, the jury found that Destefano's actions did not cause Ela to suffer any actual damages. The jury did not reach the third interrogatory, which asked what amount of compensable damages were attributable to Destefano's conduct.

---

[1] Destefano also admitted that she did not have a legitimate law enforcement purpose when she testified at trial. During her testimony, Destefano admitted that it was a "very big mistake."
[2] Ela testified that she was "sickened" by Destefano's actions, which made her feel "anxious, nervous, sick, angry [and] violated."

After the trial, Ela, by motion, requested $252,500 in liquidated damages: $2,500 for each of Destefano's 101 violations of the DPPA. Ela also sought attorneys' fees of $153,787 and costs of $4,227.44. The district court awarded Ela $2,500 in liquidated damages, $15,379 in attorneys' fees, and $4,227.44 in costs. The court explained that it awarded only $2,500 for the DPPA violations because this case does not implicate the purposes of the DPPA, Destefano did not use or disclose Ela's private information, and Ela did not suffer any actual damages. The court then explained its decision on attorneys' fees by noting that this "lawsuit resulted in an award of 0% of [Ela's] request[ed] $1 million in compensatory damages, 1% of her request[ed] $252,000, and at most a minimal spill-over benefit for the public, [so] a reasonable attorney[s'] fee incurred by [Ela] in litigating this case is 10% of $153,787, or $15,379."

## II.

We review a district court's interpretation of a statute de novo. *See Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209, 1211 (11th Cir. 2005). The parties agree that if we conclude that the district court has discretion to award the statute's enumerated amount and not multiply it per violation, we review the court's damages award for abuse of discretion. *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 816 (11th Cir. 2004) (per curiam).

## III.

4

The analysis of this case involves a simple matter of statutory interpretation. We hold that the text of the DPPA, our prior precedent, and the statutory context set a floor of $2,500 in liquidated damages, and any award the district court grants above that amount is reviewed for abuse of discretion.

We begin by analyzing the language of the statute. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). This case stems from violations of the DPPA, specifically 18 U.S.C. § 2724:

> (a) Cause of action.—A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
>
> (b) Remedies.—The court may award—
>
>> (1) actual damages, but not less than liquidated damages in the amount of $2,500;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and
>>
>> (4) such other preliminary and equitable relief as the court determines to be appropriate.

Raising an issue of first impression in this Circuit, Ela urges us to find that the damages list in § 2724(b) applies to each instance that a person "knowingly obtains, discloses or uses personal information" from a motor vehicle record with an improper purpose in violation of § 2724(a). In other words, she argues that the

5

plain text of the statute sets a floor of $2,500 *per violation*.[3]  Despite Ela's

assertions that the DPPA's language is clear, we find it far from clear.  The text of

the DPPA does not explicitly require per violation awards, but it does not seem to

foreclose them either.

While the statute's plain language neither requires nor prohibits an award of

liquidated damages *per violation*, the remedy provision does use plainly permissive

language.  The use of the word "may" implies that what follows is a permissive

rule.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of

Legal Texts* 112 (2012).  Not only does the use of the word "may" imply

permissiveness, but we have expressly held so when interpreting this exact

provision of the DPPA.  In *Kehoe*, we held that "[t]he use of the word 'may' [in

§ 2724(b)] suggests that the award of *any* damages is permissive and

discretionary."  421 F.3d at 1216 (emphasis added).  Therefore, "the district court,

in its discretion, may fashion what it deems to be an appropriate award."

*Id.* at 1217.  While Destefano undoubtedly violated the DPPA, the jury found that

Ela did not suffer any actual damages.  The district court properly used its

discretion to fashion a damages award appropriate for this situation.  A textual

reading of § 2724 leads us to the conclusion that the district court's discretion is

---

[3] Ela thus requests $2,500 for each of Destefano's 101 violations of the DPPA, for a total of $252,500 in liquidated damages.

only limited in the sense that it must award at least $2,500 if any violation has been shown.  For awards above that amount, we review for abuse of discretion.

Statutory context also supports our reading of § 2724.  We find it relevant that Congress chose to require cumulative damages in the criminal section of the DPPA, § 2723, which it passed on the same day as § 2724.  Section 2723(b) states that when a DMV has "a policy or practice of substantial noncompliance with this chapter," it shall be subject "to a civil penalty imposed by the Attorney General of not more than $5,000 a day for each day of substantial noncompliance."  18 U.S.C. § 2723(b).  "It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Duncan v. Walker*, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001) (internal quotation marks omitted); *see also Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1303 (11th Cir. 2008).  We thus presume that Congress knew how to include language that permits cumulative damages in the civil section, but chose not to.

Disputing this presumption, Ela argues that because § 2725 defines "person" to exclude states and state agencies, the use of the word "person" in § 2724(a) means that § 2723(b) is sufficiently dissimilar.  However, Ela's argument misses the point.  Although § 2723(b) and § 2724(a) apply to different entities, our

7

comparison of the two is only meant to show that Congress was aware how to include language authorizing cumulative damages, making its omission of such language in § 2724 deliberate and meaningful.  In addition, there is good reason for Congress to allow cumulative damages in a section about state DMVs, which theoretically would be able to better handle larger cumulative damages, as compared to the single police officer in this case.

Additionally, we find persuasive the argument that "[w]here Congress knows how to say something but chooses not to, its silence is controlling."  *See, e.g.*, *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) (internal quotation marks omitted).  Congress deliberately included language authorizing cumulative damages awards in many other statutes.  A survey of the United States Code reveals at least thirteen provisions in other federal statutes that include language (such as "per violation" or "for each violation") permitting cumulative damages.[4]  *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528, 109 S. Ct. 1981, 1994 (1989) (Scalia, J., concurring) (writing that a statute should be understood in a manner "most compatible with the surrounding body of law into which the provision must be integrated—a compatibility which, by a benign fiction, we assume Congress always has in mind").  The absence of

---

[4] *See, e.g.*, 18 U.S.C. § 248(c)(1)(B) ("statutory damages . . . per violation"); 39 U.S.C. § 3017(e)(1)(B) ("for each such violation"); 47 U.S.C. § 605(e)(3)(C)(i)(II) ("statutory damages for each violation").

any similar language in § 2724 is conspicuous, and in this case, we find Congress's silence persuasive.

By no means should our decision today be read to discourage or undermine the importance of private litigation to vindicate a public benefit. While Destefano's conduct here was unmistakably wrong and police officers should not be allowed to take advantage of their position of power to access private information, the statute specifically provides for punitive damages to deter this conduct. 18 U.S.C. § 2724(b)(2). Reading "per violation" into the statute's liquidated damages clause to mandate cumulative damages would enable unharmed plaintiffs to abuse this provision.

We conclude that the district court did not abuse its discretion in shaping a damages award appropriate for the facts of this case. We affirm the award of $2,500 in liquidated damages.

## IV.

We review an award of attorneys' fees for abuse of discretion. *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999). Reasonable attorneys' fees are available for prevailing parties under the DPPA and § 1983.[5] 18 U.S.C. § 2724(b)(3); 42 U.S.C. § 1988. In this case, Ela requested $153,787 in attorneys'

---

[5] "[W]e find the relief offered by the DPPA and Section 1983 to be complementary." *Collier v. Dickinson*, 477 F.3d 1306, 1311 (11th Cir. 2007).

9

fees for 481 hours of attorney time.  The district court awarded $15,379, compensating Ela's attorneys for 48 hours of work.

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).  This number is called the lodestar and "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."  *Id.*  In determining whether the lodestar is reasonable, "the [district] court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."[6]  *Id.*  If the lodestar is reasonable, a downward adjustment "is merited only if the prevailing party was partially successful in its efforts."  *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993) (per curiam).  A district court must determine what counts as partial success on a case-by-case basis.  *See Bivins*, 548 F.3d at 1351 n.3.

---

[6] The *Johnson* factors are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Bivens*, 548 F.3d at 1350 n.2 (citing *Johnson*, 488 F.2d at 717–19); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

Here, the district court did not start its analysis with the lodestar and erred in its approach to the *Johnson* factors.  The court mainly discussed the eighth *Johnson* factor, the amount involved and the results obtained.[7]  While those are certainly relevant considerations, especially for determining an appropriate downward adjustment, under the circumstances of this case we find that the district court went too far by reducing the requested fees by 90%.

We also find problematic the district court's court analogy to nominal damages.  The district court likened this case to one in which a party "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief," where "the only reasonable fee is usually no fee at all." *See Farrar v. Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566, 575 (1992).  However, we held in *Kehoe* that a plaintiff "need not prove actual damages to recover the other types of remedies listed in § 2724(b)," which includes attorneys' fees.  *See Kehoe*, 421 F.3d at 1212.

Additionally, liquidated damages are different from nominal damages.  Liquidated damages are "[a]n amount . . . stipulated as a reasonable estimation of actual damages."  *Liquidated Damages*, Black's Law Dictionary (10th ed. 2014).  Liquidated damages are a pre-fixed amount, set here by Congress.  Nominal

---

[7] The district court did not specifically cite *Johnson*, but almost the entire analysis of the attorneys' fees issue was devoted to discussing the amount of actual damages (or lack thereof) that Ela received.

11

damages are "a judicial declaration that the plaintiff's right has been violated." *Nominal Damages*, Black's Law Dictionary (10th ed. 2014) (quoting Charles T. McCormick, *Handbook on the Law of Damages* § 20, at 85 (1935)).  Congress stipulated a pre-fixed amount of liquidated damages; we should defer to Congress's judgment.

Because we hold that the district court erred in calculating Ela's attorneys' fees award, we reverse and remand for reconsideration.

V.

After a three-day trial, a jury concluded that no compensatory damages were appropriate.  The district court then worked within the bounds of a broad statutory grant to award liquidated damages.  We see no problem with this decision, and we affirm the award of $2,500.

As for attorneys' fees, we find that the district court failed to start with the lodestar and gave too much weight to the eighth *Johnson* factor.  We reverse and remand for the court to recalculate an appropriate amount of attorneys' fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**