[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-14099

_____

HOWARD MICHAEL CAPLAN,

Plaintiff-Appellant,

*versus*

ALL AMERICAN AUTO COLLISION, INC.,
a Florida Profit Corporation,
DORTA INVESTMENTS, LLC,
a Florida Limited Liability Company,

Defendants-Appellees.

―――――――――――――

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-61120-JIC

―――――――――――――

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Howard Caplan, an individual with a qualifying disability under the Americans with Disabilities Act of 1990 ("ADA"), *see* 42 U.S.C. § 12181, retained Ronald Stern of the Advocacy Law Firm to sue All American Auto Collision, Inc. ("All American"), and All American's landlord, Dorta Investments, LLC ("Dorta"), for alleged ADA violations following Caplan's visit to All American's place of business. Stern has filed hundreds of lawsuits under the ADA on behalf of Caplan and other individuals.

As the prevailing party, Caplan moved for attorney's fees under 42 U.S.C. § 12205. While the district court found that Caplan was entitled to attorney's fees, the district court determined that the requested amount was grossly disproportionate given the case's circumstances. The district court therefore reduced the requested fees and awarded about $8,500.[1]

―――――――――――――

[1] Stern's conduct and billing practices have been criticized in at least one other ADA case. *See, e.g.*, Transcript of Status Conference at 49, *Barberi v. J. Diaz USA Grp., Inc.*, No. 1:17-cv-22078-DPG (S.D. Fla. Feb. 22, 2019), ECF 38 ("Mr.

Caplan appeals the district court's fee award. In so doing, Caplan argues that the district court abused its discretion in reducing the amount he requested for attorney's fees. After careful review, we conclude that the district court did not abuse its discretion, and we affirm the district court's order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Caplan suffers from a "qualified disability" under the ADA and is a self-avowed "tester," meaning that he visits businesses for "the purpose of asserting his civil rights and monitoring, ensuring and determining whether places of public accommodation are in compliance with the ADA." Caplan has filed hundreds of lawsuits against businesses in South Florida for violations under the ADA.

Dorta is the owner of a small warehouse-type bay of units in Miramar, Florida. All American is an autobody repair shop and one of Dorta's tenants.

In May 2018, Caplan visited All American at its rented unit. Upon visiting All American, he discovered that All American's place of business did not comply with various ADA requirements.

Within days of the visit, Caplan sued All American and Dorta for violating the ADA. In his complaint, Caplan sought a declaration that the unit rented by All American violated the ADA

---

Stern, let me be frank with you [the requested fee] for what you had done . . . was excessive. It does not reflect what you should be proud of as a lawyer that would reflect that you were doing this in a cost efficient manner.").

and an injunction that would require All American and Dorta to remedy the alleged ADA violations. Caplan also requested reasonable attorney's fees.

On August 10, 2018, a magistrate judge referred the parties to mediation, which was held on November 8, 2018. Raul Arbelaez, the owner of All American, was unavailable and did not attend the mediation as he was elderly and in failing health at the relevant time. Dorta, All American's landlord, did attend the mediation and was, by that time, solely responsible for—and was currently in the process of—making the improvements that Caplan requested. The parties did not reach a settlement at mediation. According to Dorta, the parties failed to settle because "plaintiff's counsel [was] demanding an outrageous amount of fees . . . and he flatly refuse[d] to settle unless Dorta agree[d] to pay him those fees."

On November 12, 2018, Caplan moved for sanctions against the defendants because All American did not attend the mediation. The district court denied the sanctions motion.

On November 15, 2018, seven days after the mediation, Caplan moved for summary judgment, which the district court granted. Along with injunctive relief, the district court ordered defendants to pay reasonable attorney's fees and costs under 42 U.S.C. § 12205.

On January 30, 2019, Caplan filed a motion for attorney's fees under § 12205 and requested $41,269.30 for attorney's fees, litigation expenses, expert witness fees, and costs. Of the requested

$41,269.30, $38,014.50 was for attorney and paralegal fees. The requested attorney's fees were based on an hourly rate of $420 for Stern, an hourly rate of $295 for Stern's associate, Ronnette Gleizer, and an hourly rate of $125 for Stern's paralegals. Stern charged 96.4 hours: 88.1 attorney hours, with 87.9 of those hours attributed to Stern himself, and 8.3 paralegal hours.

On September 16, 2019, the district court granted Caplan's motion for fees in part and denied it in part. The district court found that the requested fees and expenses were "grossly disproportionate to the context and circumstances of this case," as the case "was a routine tester action under the ADA" and "one of hundreds Stern ha[d] filed in [the Southern District of Florida]—almost all of which settle[d]." The district court also found that some of Stern's conduct in this litigation "caused it to become needlessly protracted and contentious," e.g., the filing of the sanctions motion that was "wholly unnecessary to achieve the desired result of th[e] lawsuit" and pleadings filled with "hyperbolic and accusatory language." The district court noted that the defendants claimed that they were unaware of the ADA violations and indicated that they were willing to fix the violations early in the proceedings. And the district court explained that "[w]hile the ADA permits attorneys to recover fees, it does not give attorneys license to over-litigate cases at the expense of defendants who are willing to modify their property to comply with the ADA."

As for the number of hours expended, the district court noted that Stern was handling at least 140 other ADA lawsuits

during this litigation such that it was "inconceivable that Stern spent 88 hours on this case." The district court found that Stern excessively billed for drafting the complaint and motion for summary judgment, preparing discovery, and drafting the settlement proposal because the documents were "boilerplate" and could be "recycle[d] in most ADA cases he files." And the district court explained that it must deduct time spent on unnecessary motions, including the motion for sanctions and a motion to compel discovery, for which Stern billed at least 16 hours.

The district court further noted that many entries on Stern's time sheet, totaling about 10 hours, were "administrative tasks that either should not be included or could have been charged to his paralegal." The district court also expressed skepticism as to the 10 hours Stern included for reviewing docket entries and the 8.6 hours Stern billed for meeting with Caplan. Lastly, the district court found that 4.7 hours of the hours billed for preparing the motion for costs and fees, out of around 6 hours spent on that motion, were not compensable.

The district court determined that an across-the-board reduction was warranted because the result "could have been achieved much more efficiently and far less expensively." The district court explained that, while it highlighted many excesses in Stern's fee request, it would reduce the requested hours with an across-the-board reduction of 75% rather than going through the hundreds of entries on Stern's time sheet. This calculation yielded 24 hours—20 hours of attorney time and 4 hours of paralegal time.

The district court recognized that the reduction was high but explained that Stern "needlessly prolonged the litigation" and that compensating Stern for those tactics "would encourage the practice of driving up litigation costs in ADA lawsuits."

As for the hourly rates charged, the district court found that a rate of $350 per hour was reasonable for all of the legal work performed in the case. In so doing, the district court reasoned that: (1) the case "did not involve any novel or complex questions of law"; (2) Stern "relie[d] on the same boilerplate pleadings in virtually every ADA case" he litigated; (3) "at least half of the hours in this case could have—and indeed should have—been handled by Stern's associate at the rate of $295 an hour"; and (iv) given that "Stern's conduct . . . prolonged the litigation, a reduction in his hourly rate [was] warranted."

Accordingly, the district court awarded $7,500 in attorney's fees. In total, the district court awarded Caplan $8,579.80 inclusive of expenses and fees. This appeal ensued.

## II.    STANDARD OF REVIEW

We review the district court's decision awarding attorney's fees and costs under the ADA for abuse of discretion. *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (per curiam). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* (quoting *Cordoba v. Dillard's,*

*Inc.*, 419 F.3d 1169, 1180 (11th Cir. 2005)). A district court's factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III.    ANALYSIS

This appeal involves a fee award for claims brought under the ADA. Under Section 12205 of the ADA, a court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A reasonable attorney's fee, in turn, is calculated "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."[2] *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The sum of this calculation is often called the "lodestar." *Ass'n of Disabled Ams.*, 469 F.3d at 1359 (quoting *Hensley*, 461 U.S. at 433–34).

Although "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve," we have instructed

---

[2] "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

that, in determining whether the lodestar amount is reasonable, "the [district] court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (alteration in original) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam)); *see also Hensley*, 461 U.S. at 434 n.9. Those twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Ass'n of Disabled Ams.*, 469 F.3d at 1359 n.1 (citing *Johnson*, 488 F.2d at 717–19). Along with these factors, and in calculating the lodestar amount, a district court should "exclude . . . hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94–1011, at 6 (1976)).

Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested. Indeed, a district court "may consider its own knowledge and experience

concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302, 1303 (11th. Cir. 1988) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)); *accord Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam).

On appeal, Caplan asserts that the district court abused its discretion by reducing Caplan's requested attorney's fees.  Caplan generally asserts three categories of errors in support of his appeal: (1) the district court erred in finding that many hours claimed within Caplan's fee request were excessive and unnecessary; (2) the district court should have held an evidentiary hearing to determine whether the case could have been settled earlier in the proceedings; and (3) the district court's application of a 75% across-the-board reduction was erroneous.[3]  We begin our analysis by addressing Caplan's argument that the district court erred in finding that various time entries were unnecessary and excessive.

### A.    Hours Expended

---

[3] On appeal, Caplan did not dispute the district court's determination that $350 per hour reflected a reasonable hourly rate for the legal work here or the district court's reduction to the requested litigation costs.  Caplan has therefore abandoned any challenges to these issues. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("[I]t is well settled in this circuit that a party abandons an issue 'by failing to list or otherwise state it as an issue on appeal.'" (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012))).

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  And a district court should deduct time for excessive or unnecessary hours because attorney's fees are intended "to compensate attorneys for work reasonably done actually to secure for clients the benefits to which they are entitled." *Norman*, 836 F.2d at 1302, 1305.  "In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Id.* at 1301.  For example, a district court may conclude that "a fee applicant is not entitled to compensation at an attorney's rate" where "an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Id.* at 1306.

Here, the district court explained that Stern's claim that he spent 88 hours litigating this case on behalf of Caplan was unreasonable, as Stern was handling at least 140 other ADA lawsuits during that period.  As for specific claimed hours, the district court identified several categories of hours that were unnecessary and/or excessive.  For example, the district court found that Stern excessively billed for "boilerplate . . . legal tasks," and for "clerical work or work that could have been performed by [his] paralegal."  The district court also found that Stern billed for unnecessary motions.  And, as a general matter, the district court found that "much of the time expended was of minimal value to the ultimate result"

because Caplan would have "achieved the same result by engaging in [an] early settlement."

Caplan makes several arguments about these findings by the district court.

### 1.  Complexity of the Case

Caplan argues that the district court abused its discretion in finding that his lawsuit was routine and that Stern, therefore, excessively billed for litigating Caplan's claims.  In support of this argument, Caplan asserts that this Court and others have lauded the policy interest served by litigating civil rights cases, such as ADA cases.  *See, e.g.*, *Dowdell v. City of Apopka*, 698 F.2d 1181, 1190–91 (11th Cir. 1983).

While we have recognized this policy interest, § 12205 does not authorize attorneys to expend an unreasonable number of hours to achieve it.  *See Norman*, 836 F.2d at 1301–02.  Furthermore, as we have explained, "[t]he time that should be devoted to a case varies directly with the difficulty of the case." *Glassroth v. Moore*, 347 F.3d 916, 920 (11th Cir. 2003).  This case was a simple one involving ADA violations that the owner agreed to correct. And expertise and experience in a legal area "comes [with] knowledge, efficiency, and self-confidence, which should reduce the number of hours necessary" for the tasks involved in a case. *Id.* at 919–20.

As the district court noted, Stern has been involved in hundreds of ADA lawsuits, including 140 during the case.  Additionally,

the district court found that the pleadings and motions filed here were "boilerplate" and much like filings in Stern's other ADA cases. We therefore conclude that the district court did not abuse its discretion in finding that Stern billed an excessive number of hours given the complexity of the case.

### 2. Unnecessary Litigation

Caplan argues that the district court abused its discretion in finding that Caplan prolonged the litigation and was too litigious. Work that is unnecessary should not be reflected in an attorney's time entries and should not be included in a fee award. *See Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1302, 1305. Here, the district court found that Stern engaged in unnecessary motion practice, was too litigious, and that his conduct unnecessarily prolonged the litigation. For example, the district court found that, at the time of the mediation, Dorta had taken steps to ameliorate the ADA violations Caplan identified and provided Caplan with a contractor's proposal for making corrections to the remaining violations.[4] In other words, Dorta had accepted responsibility and offered Caplan the relief he sought. Still Caplan filed a motion for sanctions—because Arbelaez (Dorta's tenant and the owner of All American who was elderly, in poor health, and whose presence was unnecessary to resolve the asserted ADA violations) did not attend the mediation—and a motion to compel discovery.

---

[4] Dorta ultimately engaged a contractor to make the changes on December 10, 2018, before the end of the lawsuit.

Based on this record, the district court found that the sanctions motion was "wholly unnecessary to achieve the desired result of th[e] lawsuit." The district court further found that Stern took an "overly aggressive approach" to litigating Caplan's claims, particularly given Dorta's willingness to fix the identified ADA violations.

On appeal, Caplan claims that Dorta did not agree to fix the alleged ADA violations until "many months after [Caplan] filed the instant action." But that argument ignores the fact that there were very few proceedings in the case before the parties' mediation conference—i.e., when Dorta assured Caplan that it would fix the ADA violations.

Thus, the record reflects that Stern was unduly litigious and engaged in unnecessary motion practice. Accordingly, we are not "left with the definite and firm conviction that a mistake has been committed," *see Anderson,* 470 U.S. at 573 (1985) (quoting *U.S. Gypsum Co.,* 333 U.S. at 395), and conclude that the district court did not abuse its discretion in finding that Stern unnecessarily prolonged the litigation which, in turn, unnecessarily increased the amount of attorney's fees.

### 3. Arguments Regarding Hours for Specific Tasks

Finally, Caplan asserts that: (1) the district court improperly classified certain activities as "administrative"; (2) the time entries for "reviewing the docket" were not excessive; and (3) the district

court erred in holding that the time Stern spent on drafting Caplan's motion for fees and costs was not compensable.

Because Caplan's last argument—i.e., the hours that the district court found to be unnecessary in connection with Caplan's fee motion—was raised for the first time in Caplan's reply brief on appeal, we need not address it. *See Sapuppo*, 739 F.3d at 682–83 ("After Allstate pointed out in its response brief that the Sapuppos had waived any issue concerning the district court's alternative holdings, they did make some arguments and cite some authorities in their reply brief about those holdings. Those arguments come too late."); *see also Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008) ("We decline to address an argument advanced by an appellant for the first time in a reply brief."). But we note that the district court did not deduct those hours from the fee award. Instead, the district court applied an across-the-board reduction, having found that the time entries for those hours were one example, out of many, of Stern's unreasonable billing.

As for Caplan's other arguments, Caplan has failed to show that the district court abused its discretion. Caplan claims that the district court did not identify all the time entries that it considered to be administrative and that the examples the district court provided represented only 2.3 or 5 hours. But that argument ignores the fact that various time entries do not provide any details to suggest that they are anything other than "mundane, clerical[,] or . . . not requir[ing] the full exercise of an attorney's education and

judgment." *Norman*, 836 F.2d at 1306. The district court highlighted some, but not every, example "given the hundreds of time entries." But other examples exist. One other example is the unexplained discrepancy between paralegals billing for certain court filings and Stern billing, at a substantially higher hourly rate, for other court filings.

Caplan also asserts that the time entries for reviewing the docket related to reviewing legal documents and court orders. But the district court identified certain entries left unexplained and others that appeared excessive based on the docket entry that was reviewed. The district court—which is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees," *Norman*, 836 F.2d at 1303 (quoting *Campbell*, 112 F.2d at 144)—did not abuse its discretion in finding that many of the time entries for reviewing docket entries, for example 30 minutes to review a scheduling order or 18 minutes to review an attorney's notice of appearance, were excessive.

## B. Evidentiary Hearing

Caplan contends that the district court erred by failing to hold an evidentiary hearing to determine whether the case could have settled earlier in the proceedings. Although Caplan did not request an evidentiary hearing, he asserts that the district court nonetheless abused its discretion in failing to hold one. In support of his argument, Caplan cites to *Love v. Deal*, 5 F.3d 1406, 1409 (11th Cir. 1993). In *Love*, this Court held that "[i]t is not necessary for a plaintiff to request an evidentiary hearing. Rather, the

essential factor is whether there is a dispute of material fact that cannot be resolved from the record." *Id.* That statement conflicts, however, with our earlier holding in *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th. Cir. 1988), which established the standard for determining when a district court abuses its discretion in failing to hold an evidentiary hearing related to attorney's fees. In *Norman*, we held it was an abuse of discretion to make an award without an evidentiary hearing "where an evidentiary hearing was requested, where there were disputes of fact, *and* where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact." *Norman*, 836 F.2d at 1302-03 (11th. Cir. 1988) (emphasis added). This Court reaffirmed that holding in *Thompson v Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1245–46 (11th Cir. 2003) and held that the plaintiff was not entitled to an evidentiary hearing on the fee issue because the record did not show that the plaintiff had "requested an evidentiary hearing on the fee issue" and the plaintiff therefore "failed to meet the first prerequisite for obtaining a hearing (that she plainly request one in the first place)."

"This Circuit has a well-established approach to resolving conflicts in our precedent. We are 'obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule.'" *Williams v Aguirre*, 965 F.3d 1147, 1163 (11th Cir. 2020) (quoting *United States v. Hogan*, 986 F. 2d 1364, 1369 (11th Cir. 1993)). In resolving conflicts, "we are mindful that only the holdings of prior decisions bind

us." *Id.* Therefore, "legal principles set forth outside of the decision's holding do not bind us." *Washington v Howard*, 25 F. 4th 891, 900 (11th Cir. 2022). And "if reconciliation is not possible, 'we must follow the earliest precedent that reached a binding decision on the issue.'" *Id.* (quoting *Williams*, 965 F.3d at 1163).

Our earliest on-point precedent that reached a binding decision on this issue is *Norman*, which held that "where an evidentiary hearing was requested, where there were disputes of fact, *and* where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact, it was an abuse of discretion to make an award [of fees] without holding an evidentiary hearing." 836 F.2d at 1303–04 (emphasis added) (citing *King v. McCord*, 621 F.2d 205 (5th Cir.1980) and *In Re: First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977)). The use of the word "and" in *Norman* mandates that all three elements were necessary to establish that the district court abused its discretion. *Love*, however, treated this as if it were a disjunctive (i.e., "or" instead of "and"), such that the lack of any one element could establish an abuse of discretion by the district court.

Moreover, *Love* does not cite *Norman*, and the two cases it relies on for its holding—*Marable v. Walker*, 704 F.2d 1219 (11th Cir.1983), and *National Treasury Emps. Union v. IRS*, 735 F.2d 1277 (11th Cir.1984)—do not support the proposition that a party need not request an evidentiary hearing to determine fees.

In *Marable*, the plaintiff explicitly requested an evidentiary hearing, which the district court denied. 704 F.2d at 1220. And in

*National Treasury*, this Court held that the district court erred in finding that the prevailing party was not entitled to attorney's fees because the parties' settlement agreement did not specifically mention attorney's fees. 735 F.2d at 1278–79. *National Treasury* therefore did not reach a binding decision on when a district court abuses its discretion in failing to grant an evidentiary hearing on fees.

In sum, we cannot reconcile our prior precedent in *Love* with our earlier precedent in *Norman*. Because we cannot reconcile our caselaw, we must follow the earlier decision of *Norman*, which set forth the standard for determining when a trial court abuses its discretion in not holding an evidentiary hearing to determine fees. *See Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) (quoting *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013)) ("[w]hen we have conflicting case law, we follow our oldest precedent").

Because the record shows that Caplan never requested an evidentiary hearing on the fee issue, we hold that the district court did not err in failing to hold one as Caplan "failed to meet the first prerequisite for obtaining a hearing (that [he] plainly request one in the first place)." *Thompson*, 334 F.3d at 1245–46.

## C.  Across-the-Board Reduction

Caplan contends that the district court erred in applying an across-the-board reduction of 75% to the number of hours billed by Stern, his associate, and his paralegals.

Ordinarily, "when hours are disallowed the court should identify the [specific] hours disallowed and explain why they are disallowed." *Loranger*, 10 F.3d at 783. But where a fee application is voluminous and " a district court finds [that] the number of hours claimed is unreasonably high, the court has two choices: [(1)] it may conduct an hour-by-hour analysis or [(2)] it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350 (citing *Loranger*, 10 F.3d at 783). When the district court chooses the latter, it must "concisely but clearly articulate [its] reasons for selecting specific percentage reductions" such that there can be "meaningful review." *Loranger*, 10 F.3d at 783.

Here, the district court found that Caplan's fee application was voluminous, and Caplan does not contest that finding on appeal. Instead, Caplan asserts that a 75% across-the-board reduction was conclusory. But, as detailed above, the district court found that many of Stern's time entries were "excessive" or "unnecessary." The district court identified more than 60 hours' worth of time, around two-thirds of the hours within a bill that reflected a total of 96.4 hours, that it believed were excessively billed and/or were unnecessary for resolving the case. The district court also found that the total amount of time expended was unreasonable given the case's "lack of complexity, Stern's excessive time entries, the fact that he has handled hundreds of similar ADA lawsuits (using boilerplate pleadings), and his overly-aggressive tactics which needlessly prolonged the litigation." Based on its findings, the district court held that a 75% across-the-board reduction was

warranted and stated that the chosen percentage would avoid "encourag[ing] the practice of driving up litigation costs in ADA lawsuits" and, pursuant to its expertise, that 20 hours of attorney time (24 hours in total) was "reasonable in a routine tester lawsuit under the ADA that had no unusual characteristics—other than the parties' inability to compromise on the issue of attorneys' fees."

We therefore reject Caplan's argument that a 75% across-the-board reduction was conclusory. Before the district court reached that percentage, it explained in great detail the many reasons why the hours billed by Stern, as reflected on his time sheet, were excessive, unnecessary, and thus unreasonable. The district court's order therefore "articulate[d] the decisions it made, [gave] principled reasons for those decisions, and show[ed] its calculation" to allow for "meaningful review." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1304).

## IV.    CONCLUSION

For the reasons stated, we conclude that the district court did not abuse its discretion in reducing the requested amount of attorney's fees billed by Stern, and we affirm the district court's order.

**AFFIRMED.**